NOT DESIGNATED FOR PUBLICATION

No. 123,490

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS, ex rel.,
KANSAS STATE BOARD OF HEALING ARTS,
*Appellee*,

v.

SHAWN PARCELLS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Opinion filed October 28, 2022. Affirmed.

*Eric Kjorlie*, of Topeka, for appellant.

*Courtney E. Cyzman*, general counsel, and *Tucker Poling*, former executive director, of Kansas State Board of Healing Arts, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM:  The Kansas State Board of Healing Arts (the Board) filed a petition alleging Shawn Parcells engaged in the unlawful and unlicensed practice of performing autopsies in violation of multiple provisions of the Kansas Healing Arts Act (KHAA). But Parcells failed to either respond or object to any of the Board's discovery requests despite two district court orders requiring him to do so. Consequently, the district court ultimately granted the Board's request for summary judgment and permanently enjoined

1

Parcells from engaging in the activities and practices that resulted in his violations of the KHAA.

Parcells now brings his case to us accompanied by the argument that the district court erred by not giving fair consideration to the discovery he submitted in his separate consumer protection case, which arose out of similar conduct, prior to granting the Board's request for summary judgment. To avoid summary judgment, an adverse party has the burden to come forward with evidence to establish a disputed material fact. Parcells failed to do so in this case. The district court was under no legal obligation to excise such discovery from an independent, unrelated case and transplant it into the litigation between Parcells and the Board. Thus, we have no dispute with the granting of the Board's request for summary judgment. The decision of the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Shawn Parcells received his Bachelor of Science degree from Kansas State University and his Master of Science degree in anatomy and physiology from New York Chiropractic College. He also completed the DrPh program at Capella University and coursework at both the American Institute of Mortuary Science and Liberty University. He never attended medical school.

His professional life included adjunct faculty positions at Kansas City University of Medicine and Biosciences, Wichita State University, Rockhurst University, and Johnson County Community College. His career also extended beyond academia to include tissue recovery for medical research and participation in over 2,500 combined forensic, medical, and private autopsies. Finally, he was certified as a "Forensic Technology Expert" by the courts in Kansas, Missouri, Georgia, Kentucky, and Texas, and maintained several corporations in Kansas as part of his employment.

In March 2019, the State filed criminal and civil cases against Parcells in two separate counties. The following month, the Board filed its petition against him. Organized into four counts, the petition alleged multiple violations of the Kansas Healing Arts Act and the statutory provisions related to physician assistants. See K.S.A. 65-2801 et seq. (Kansas Healing Arts Act); K.S.A. 65-28a06 (Physician Assistants). As a foundation for its claims, the Board noted that Parcells never held licenses to practice medicine and surgery; engage in the practice of a physician assistant; or practice any profession regulated by the Board or described in Chapter 65 of the Kansas statutes. Ultimately, the Board requested injunctive, declarative, and other statutory relief against Parcells.

Count one alleged that Parcells engaged in the unlicensed practice of profession(s) regulated by the Board in violation of K.S.A. 65-2803 and K.S.A. 65-2857. Specifically, the petition alleged that Parcells was guilty of independently performing autopsies, rendering medical diagnoses in the context of autopsies, attaching words or abbreviations to his name which identify him as a practitioner of medicine and surgery, and finally, publicly professing to duties attendant to the practice of medicine and surgery.

Count two alleged that Parcells violated K.S.A. 65-2803, K.S.A. 65-2857, and K.S.A. 65-2867 by holding himself out to the public or announcing the authority, skill, or intention to practice the healing arts. As examples the Board pointed out that Parcells represented himself as a practitioner of forensic medicine, as well as a pathologist or forensic pathologist, a medical examiner, and a doctor who offers autopsy services.

Count three alleged that Parcells inappropriately maintained an office to practice healing arts and that, relatedly, Parcells practiced unlicensed corporate medicine. In particular, the Board accused Parcells of maintaining a general corporation offering services that constitute the practice of medicine and surgery, including but not limited to autopsies. Those services were provided through Parcells Forensic Pathology Group;

3

National Autopsy Services, LLC; Kansas Regional Forensic Services; Kansas Forensic Experts; Kansas Forensics; Kansas Forensics and Tissue Recovery Services; Parcells & Company; and/or National Autopsy & Tissue Recovery Services, Inc. The Board further noted that Parcells maintained facilities for the practice of providing autopsies and employed physicians to provide services to third parties that constitute the practice of medicine and surgery, including but not limited to autopsies.

Count four alleged that Parcells represented he was a physician assistant by using abbreviations such as "PA" in connection with his name in the context of offering professional acts that constitute the practice of medicine and surgery and/or the scope of practice of a physician assistant. According to the Board, Parcells continued to use such designations even after being advised that his use thereof tended to mislead others to believe that he was a physician assistant. The Board noted that in sworn testimony on September 11, 2012, Parcells asserted "'I'm . . . no different than a physician assistant or nurse practitioner specializing in forensic medicine.'"

Parcells filed an answer 12 days later. He argued, among other things, that he never held himself out as a physician and that he was "lawfully authorized" to use the title "PA" because he had extensive training and experience as a pathology assistant.

The Board served its initial discovery requests in June 2019, including interrogatories, a Request for Production, and a Request for Admissions. Six days later, Parcells agreed to a case management order controlling discovery.

Parcells had 30 days to respond as well as to enter any potential objections. See K.S.A. 2018 Supp. 60-233(b)(2) (time requirement for interrogatories); K.S.A. 2018 Supp. 60-234(b)(2)(A) (time requirements for production of documents); K.S.A. 2018 Supp. 60-236(a)(3) (time requirements for requests for admissions). Thirty-two days passed with no response from Parcells, so the Board sent counsel a letter referencing his

failure to meet the statutory deadline and offering three more days to reply. But still Parcells took no action. The next week, the Board followed up with a second, more formal correspondence in which it highlighted the "golden rule" and offered yet another three days to respond to the discovery request. The next day Parcells' counsel requested that opposing counsel from each of his three pending cases meet to discuss settlement options. Parcells also advised the Board of his willingness to sign an agreed order confessing judgment. But roughly two months later Parcells inexplicably reversed course and refused to sign any such order.

The Board responded with two motions. First, it sought to enter Parcells' admissions to the record in accordance with K.S.A. 2018 Supp. 60-236(a)(3) which provides that a failure to timely respond to a request for admissions constitutes an admission to the matter. Second, the Board sought to compel Parcells' answers to its interrogatories and request for production. Three days later, Parcells presented an offer of judgment. The court granted both of the Board's motions and ordered Parcells to respond to the Board's discovery requests by October 25, 2019.

The court's deadline came and went with no response from Parcells so, a month later, the Board filed a Motion for Summary Judgment or, in the alternative, for Default Judgment. In support of its request, the Board asserted that such relief was appropriate because it was undisputed that Parcells engaged in each of the licensed practices set forth in its petition without the required license. The Board also argued that because Parcells failed to obey the court's discovery orders K.S.A. 2018 Supp. 60-237(b)(2)(vi) allowed for default judgment as an appropriate alternative remedy.

Parcells responded with a motion seeking to stay discovery for four months. He argued that because he currently faced criminal charges any discovery might affect his right to a fair trial. He noted that his preliminary hearing in the criminal case was continued to January 16, 2020, and the district court already granted a stay of discovery

in his other civil case. Finally, he argued his request should not be objectionable because the bond conditions imposed in his criminal case, as well as a temporary restraining order in the other civil case, would serve to prevent any future harm to the public, a primary point of concern for the Board.

The Board responded to Parcells' request with three simple assertions. First, it argued the court should rule on its Motion for Summary Judgment, or in the alternative, Default Judgment prior to ruling on Parcells' motion to stay discovery. It next contended that Parcells waived his ability to seek a stay of discovery by not lodging any objections in the initial 30 days after the Board's request. Finally, it argued that a careful analysis of the factors outlined by the Kansas Supreme Court in *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 22 P.3d 124 (2001), demonstrated that a stay of discovery was not appropriate.

One day later, Parcells filed a Motion for Additional Time to Respond to the Board's Motion for Summary Judgment, or in the alternative, Default Judgment. He essentially simply echoed the arguments advanced in support of his request to stay discovery.

The court entered a ruling on the matter in short order. While acknowledging "Parcells' unexcused and complete failure to respond to the Board's written discovery," it rejected the Board's arguments that it should rule on the Board's Motion for Summary Judgment, or in the alternative, Default Judgment prior to Parcells' two December motions because discovery had not taken place and the pretrial conference was not scheduled until October 2020. Instead, the court granted both of Parcells' motions and stayed the discovery deadline until January 31, 2020. It also extended Parcells' deadline to respond to the Board's Motion for Summary Judgment to the same date, but that extension was contingent upon Parcells answering the Board's interrogatories and requests for production. The court very explicitly noted: **"Defendant must answer written discovery by January 31st, and no further delays will be tolerated**."

6

Parcells ultimately responded to the Board's summary judgment motion and argued there were "bonafide genuine issues of material fact" requiring a jury determination. He attached as an exhibit the answers/responses that he provided to the State's request for admissions in his other civil case and explained that, until the resolution of his criminal case, he could not offer a comprehensive response to the Board's allegations. He also reiterated his earlier offer of judgment, that his criminal bond conditions, as well as the statutory provision that required autopsies, tissue recovery, and other-like pathologist assistant professional services to first be referred or coordinated by a medical provider, would prevent him from engaging in the conduct currently under scrutiny.

The Board replied and noted Parcells' response did not adhere to Kansas Supreme Court Rule 141(b) (2020 Kan. S. Ct. R. 205), because he used the terms "Admit" and "Deny" instead of the required terminology of "Uncontroverted" or "Controverted." Moreover, according to the Board, Parcells disputed irrelevant and immaterial issues but did not address any genuine issues of material fact through the identification and summarization of conflicting testimony or evidence.

The Board also filed a Renewed Motion for Default Judgment. It acknowledged that such relief was an extraordinary step but explained it never received any discovery from Parcells in violation of the court's order requiring him to answer written discovery by January 31. Parcells replied two weeks later and argued the court should deny the Board's motion because his delayed discovery response stemmed from excusable neglect. Then he again repeated that his Fifth Amendment right to remain silent would be jeopardized by discovery and that the court should take the same step it did in his other civil case and enter a stay in discovery. Soon after, Parcells filed another motion to stay discovery, requested to convene another status conference, and asked for leave to amend the December case management order.

A few weeks later, the Board filed a Notice of Completed Pleadings and alternatively Motion to Continue Plaintiff's Expert Disclosure. It suggested that the motions related to Summary Judgment, Default Judgment, and Staying Discovery were ready for ruling. The Board also requested that the deadline for the Board's experts to review Parcells' discovery answers be continued until 60 days after Parcells provided his answers. Parcells responded four days later asking the court to set all the raised matters for a hearing.

The district court issued a memorandum decision denying the Board's Motion to Continue its Expert Disclosure Deadline, Parcells' Renewed Motion to Stay Discovery, and Parcells' Request to Convene a Status Hearing. It granted Parcells' Motion to File a Proposed Amendment to the Case Management Order and noted that two outstanding motions remained: the Board's Motion for Summary Judgment or, in the alterative, Default Judgment and the Board's Renewed Motion for Default Judgment as a Sanction.

The court held a hearing via Zoom to address the outstanding motions. The Board remained firm in its position that summary judgment was appropriate and further argued that given the troubled procedural history of the case, as well as Parcells' persistent refusal to participate in discovery, default judgment offered an acceptable alternative remedy.

Parcells highlighted his other ongoing cases and explained that he offered judgment which the Board repeatedly refused to accept. Parcells asserted that summary judgment was not appropriate because it remained a contested fact whether a board-certified pathologist must be present whenever Parcells, who was not board certified, performed autopsies/tissue recovery. He pointed out that the answers he submitted to discovery in his consumer protection case were attached as an exhibit to his response to the Board's summary judgment motion and related information could be gleaned from that document. He contested whether he was truly prohibited from attaching the acronym

"PA" to his name in light of his prior training and asserted that he never held himself out as a doctor. Notably, he uttered this latter assertion while using the name "Doc Parcells" during the Zoom hearing.

The Board responded that it was willing to accept an earlier offer of judgment proposed by Parcells. But after doing so, Parcells shifted course and altered the offer to a version the Board found unacceptable. It further argued there was no support for Parcells' contention that he met the qualifications necessary to properly carry the designation of pathologist assistant.

Following arguments, the court voiced concern over Parcells' failure to respond to the Board's discovery requests as ordered and concluded "that there just is not evidence before this court in response to the motion for summary judgment." As a result, the court granted the Board's summary judgment motion and did not reach its motion for default judgment. Its corresponding journal entry explicitly granted summary judgment on each of the four counts outlined in the Board's petition.

Parcells timely brought the matter to this court for review.

ANALYSIS

In pleading his case to us, Parcells argues that the district court granted summary judgment in error. He contends that had the court taken note of the discovery responses from his consumer protection case as Parcells proposed it would have been clear that he did actually come forward with evidence to establish a disputed material fact.

9

*The district court properly granted the Board's request for summary judgment following Parcells' failure to provide sufficient evidence of controverted material facts.*

Parcells argues the district court failed to appreciate and consider the factual kinship shared by this case and his consumer protection litigation. He claims the court's failure to heed the extensive record in the latter case was particularly problematic because it involved identical facts and responsive pleadings. According to Parcells, facts were contested "in his Answers to Requests for Admissions in the 'companion' consumer protection [c]ase."

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 310 Kan. 644, 448 P.3d 383 (2019)." *GFT Lenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

When making summary judgment decisions, district courts contemplate the evidence presented by each party. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 330, 277 P.3d 1062 (2012) (quoting *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 [2009] (noting that when reviewing courts "find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied"). Therefore, these decisions necessarily include prerequisite evidentiary findings. Here, Parcells suggests that the responses provided in

10

an unrelated case amounted to evidence the district court had an obligation consider in this case before rendering its decision on the Board's request for summary judgment.

The first step in determining whether a trial court properly excluded evidence is analyzing its relevance. *Castleberry v. DeBrot*, 308 Kan. 791, 812, 424 P.3d 495 (2018). Relevant evidence is both material and probative. *Kansas City Power & Light Co. v. Strong*, 302 Kan. 712, 729, 356 P.3d 1064 (2015). "Evidence is material if the fact it supports is in dispute or in issue and probative if it has a logical tendency to prove a material fact." 302 Kan. at 729. "All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision." 302 Kan. at 729.

A district court may still exclude relevant evidence if the court finds that the evidence's "probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered." K.S.A. 60-445. Appellate courts review such decisions for an abuse of discretion. *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 979-80, 59 P.3d 325 (2002). "An abuse of discretion occurs if: (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact." *State v. Ballou*, 310 Kan. 591, Syl. ¶ 8, 448 P.3d 479 (2019).

Filtering the consumer protection discovery responses through this framework we find that they were relevant in that they were material and probative because they discussed disputed facts, including Parcells' autopsy experience. But relevant evidence is not admissible if it violates a statute. *Strong*, 302 Kan. at 729. Requests for admissions are governed by K.S.A. 2018 Supp. 60-236. K.S.A. 2018 Supp. 60-236(a)(1) provides:

> "*Availability and scope*. A party may serve on the plaintiff after commencement
> of the action and on any other party with or after service of process on that party a written

request to admit, *for purposes of the pending action only*, the truth of any matters within the scope of K.S.A. 60-226, and amendments thereto, relating to:

(A) Facts, the application of law to fact or opinions about either; and
(B) the genuineness of any described documents." (Emphasis added.)

Whether evidence is prohibited by statute is a question of law, over which this court has unlimited review. See *Strong*, 302 Kan. at 723 ("As such, the question at the heart of this appeal is a purely legal question requiring us to interpret and apply K.S.A. 26-513. Our review of this question is unlimited."). "All Kansas courts use the same starting point when interpreting statutes: The Legislature's intent controls. To divine that intent, courts examine the language of the provision and apply plain and unambiguous language as written." *Jarvis v. Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020). When doing so, courts must give "common words their ordinary meaning." *State v. Ryce*, 303 Kan. 899, 906, 368 P.3d 342 (2016). "If the Legislature's intent is not clear from the language, a court may look to legislative history, background considerations, and canons of construction to help determine legislative intent." *Jarvis*, 312 Kan. at 159.

The plain language of K.S.A. 2018 Supp. 60-236(a)(1) undeniably states that requests for admissions are only to be used for the pending action in which the requests were served. Thus, Parcells endeavored to have the district court act in contravention of that provision when he extracted discovery responses from one case and argued for their implementation in a separate legal action purely by fiat. The Board's case is distinct in fact, law, and jurisdiction from the other matters in which Parcells was embroiled. Thus, the use of the discovery evidence at issue is limited to the consumer protection action in which it was submitted. To hold otherwise would violate the Kansas Rules of Civil Procedure. See K.S.A. 2018 Supp. 60-236(a).

Parcells fails to provide authority to the contrary. At the hearing on the summary judgment motion Parcells disagreed with the court's position that consideration of the

consumer protection discovery was not appropriate. Rather, he seemingly adopted a more global view of the rules of admissibility and argued the district court must consider "all matters, and all evidence, including any answers, other pleadings, and it does not have to be specific, to the case" in which such matters are argued. He continues to adhere to that position on appeal but fails to cite compelling or controlling legal authority to support his view. We note that Parcells' response to the Board's summary judgment motion cites *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005), and *Nungesser v. Bryant*, 283 Kan. 550, 556, 153 P.3d 1277 (2007), but neither relate to a request for admissions from another case. To the contrary, the only real relevance those cases have to the matter at hand is their generalized recitation of the standard of review which provides the parameters for the appellate courts' analysis of a district court's ruling on a summary judgment request. Additionally, in his appellant brief, Parcells cites no specific authority on this issue, but instead cites to the summary judgment standard of review. Parcells thus did not adequately brief this issue. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue).

That said, the district court did make an additional implicit finding beyond its conclusion that including the consumer protection discovery here would violate the Kansas Rules of Civil Procedure. During the hearing, the court explained:

> "Sir, this would put—this would put the Board's counsel in a very difficult position. Because if the Board's counsel, who is not the judge, relies on that information from a different case, to try to go forward with their case here. And then you can say no, that's in a different case, that's not what I meant here."

The statute contemplates similar worries. K.S.A. 2018 Supp. 60-236(b) provides:

"*Effect of an admission; withdrawing or amending it*. A matter admitted under this section is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to subsection (e) of K.S.A. 60-216, and amendments thereto, the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this section is not an admission for any other purposes and cannot be used against the party in any other proceeding."

Therefore, even if we were to conclude that the consumer protection discovery was relevant and not statutorily barred by K.S.A. 2018 Supp. 60-236(a)(1), which we do not, we still uphold the trial court's exclusion of that information because it properly found that Parcells' ability to alter the meaning of that discovery dependent upon the context in which it was admitted rendered it too prejudicial to the Board. See K.S.A. 60-445; *P.W.P. v L.S.*, 266 Kan. 417, 431, 969 P.2d 896 (1998) (abuse of discretion standard used to review district court decisions to amend admissions). The district court did not commit a factual or legal error, and it cannot be said that no reasonable person would agree that excluding the consumer protection admissions was appropriate given the court's reasoning and the relevant statutory provisions. Accordingly, we reject Parcells' claim that the district court erred when it refused to consider the discovery he provided in his consumer protection case when arriving at its decision about the Board's summary judgment motion in this case.

We now turn to the heart of the matter and analyze whether, as Parcells alleges, controverted facts existed that made summary judgment inappropriate. Again, summary judgment is the correct action to take when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *GFT Lenexa, LLC*, 310 Kan. at 981-82. In conducting its assessment the district court must resolve all facts and reasonable inferences drawn from the evidence in favor

14

of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a disputed material fact. 310 Kan. at 981-82.

Following a thorough review of Parcells' case, we find the district court properly granted the Board's Motion for Summary Judgment on each of the four points highlighted by the Board. The record bears out that when making its decision, the court contemplated, among other things, the Board's petition, Parcells' answer, the Board's motion for summary judgment, Parcells' answer to the motion for summary judgment, and the Board's request for admissions that Parcells failed to respond to and was therefore deemed uniformly admitted by the district court under K.S.A. 2018 Supp. 60-236(a)(3). We address each point in turn.

First, the district court properly found that Parcells "engaged in the practice of medicine and surgery by performing autopsies in Kansas and writing autopsy reports" without a license. K.S.A. 65-2803(a) provides:

> "[I]t shall be unlawful for any person who does not have a license, registration, permit or certificate to engage in the practice of any profession regulated by the board or whose license, registration, permit or certificate to practice has been revoked or suspended to engage in the practice of any profession regulated by the board."

Furthermore, K.S.A. 65-2869 defines persons practicing medicine and surgery as:

> "(a) Persons who publicly profess to be physicians or surgeons, or publicly profess to assume the duties incident to the practice of medicine or surgery or any of their branches.
>
> "(b) Persons who prescribe, recommend or furnish medicine or drugs, or perform any surgical operation of whatever nature by the use of any surgical instrument, procedure, equipment or mechanical device for the diagnosis, cure or relief of any

15

wounds, fractures, bodily injury, infirmity, disease, physical or mental illness or psychological disorder, of human beings.

"(c) Persons who attach to their name the title M.D., surgeon, physician, physician and surgeon, or any other word or abbreviation indicating that they are engaged in the treatment or diagnosis of ailments, diseases or injuries of human beings."

In Kansas, only physicians may perform autopsies. See K.S.A. 65-2893; K.S.A. 22a-233. In paragraph 3 of his answer to the Board's petition, Parcells agreed that he did not hold any licenses with the Kansas State Board of Healing Arts. Additionally, in the admissions adopted by operation of K.S.A. 2018 Supp. 60-236(a)(3), Parcells acknowledged that he did not hold any applicable license or attend medical school and conceded that he conducted autopsies and prepared the autopsy reports at issue. Accordingly, it is without question Parcells violated K.S.A. 65-2803(a) by conducting autopsies without a license. He failed to come forward with any evidence revealing a genuine issue of material fact existed with respect to this issue.

Turning to the second point raised in the Board's motion, we find the district court properly held that Parcells violated K.S.A. 65-2867 by (1) maintaining an office for the practice of the healing arts and (2) holding himself out to the public as someone with the skill and authority required to practice the healing arts.

K.S.A. 65-2867(a) provides:

"It shall be unlawful for any person who is not licensed under the Kansas healing arts act or whose license has been revoked or suspended to open or maintain an office for the practice of the healing arts as defined in this act or to announce or hold out to the public the intention, authority or skill to practice the healing arts as defined in the Kansas healing arts act by the use of any professional degree or designation, sign, card, circular, device, advertisement or representation."

16

Parcells agreed in his answer and admissions that he is not licensed under the Healings Arts Act. Additionally, as an exhibit to the Board's Motion for Summary Judgment, the Board presented the district court with public records reflecting that Parcells was the registered agent of the following Kansas corporations: Parcells Forensic Pathology Group, LLC and National Tissue and Autopsy Recovery Services Inc. The district court properly took judicial notice of those records pursuant to K.S.A. 60-409. And several pages attached to Parcells' initial answer appear to suggest the fact that Parcells conducted an autopsy for National Tissue and Recovery Services Inc.

First, the business name alone "National Tissue and Autopsy Recovery Services Inc." suggests to the public that Parcells has the skill and authority to practice the healing arts. Additionally, Black's Law Dictionary 166 (11th ed. 2019) defines "autopsy" as "[a] medical examination of a corpse to determine the cause of death, esp. in criminal investigation." The above referenced pages in Parcells' answer appear on National Tissue and Recovery Services Inc. letterhead, provide a detailed external examination of a corpse, and include a section identifying the cause of death as asphyxiation. Parcells' name appears at the bottom of the report. Therefore, Parcells' business ventures undeniably involved his practice of the healing arts given that he conducted an autopsy even though he was not licensed to do so by the Kansas State Board of Healing Arts.

We cannot conclude that the district court reached its conclusion in error when it granted the Board's request for summary judgment on this point.

Point three also addresses Parcells' unlawful corporate practice of medicine. In arriving at its conclusion, the district court relied on the Kansas Supreme Court's decision in *Early Detection Center, Inc. v. Wilson*, 248 Kan. 869, 811 P.2d 860 (1991). In that case, the court explained that "general corporations who have unlicensed directors or shareholders are not authorized to practice the healing arts." 248 Kan. at 876-77. Again, Parcells failed to come before the district court with any evidence to prove he carried the

17

proper license and, on appeal, he does not contest that his corporations were general corporations or that he was a director or shareholder. Thus, the district court properly awarded summary judgment on this point.

Parcells delves extensively into the final point which is whether the district court properly held that he violated K.S.A. 65-28a06 by using the abbreviation "PA." K.S.A. 65-28a06(b) provides:

> "No person shall use any title, abbreviation, letters, figures, sign, card or device to indicate that any person is a licensed physician assistant, nor shall any person represent oneself to be a licensed physician assistant unless such person has been duly licensed as a physician assistant in accordance with the provisions of this act."

Parcells does not contest that he uses the abbreviation "PA" after his name. He contends that he "should be entitled to use the designated abbreviation of 'PA' in his long-chosen field of tissue recovery . . . " and that a controverted material fact exists with respect to this point.

Parcells highlights specific points in the record as support for his contention that there is a controverted material fact surrounding this issue. First, he directs us to his answer, in which he contended that because of his education, experience, and training he is lawfully authorized to deal with matters involving deceased individuals and he may hold himself out to the public as a highly trained pathologist's assistant through the abbreviation "PA" following his name.

Parcells next highlights that portion of his answer where he explained that he had significant training and experience related to forensic science and notes that pathologist assistants across the United States have labs and conduct autopsy tissue sampling. He asserts this information was sufficient to demonstrate for the district court that a disputed material fact existed regarding the proper use of that abbreviation. In an effort to buttress

18

his claim that he is worthy of the designation he draws our focus to his education, peer-reviewed literature, and experience teaching and testifying in court as a forensic scientist.

Finally, Parcells points to that portion of his response to the Board's summary judgment motion where he asserted that based on his years of experience, training, and education, he, and other pathologist's assistants like him, were not required to obtain licensure to practice their profession, but were grandfathered in. According to Parcells, this contention gives rise to a fact issue that cannot be disposed of through summary judgment and must be determined by a jury.

Collectively, the material highlighted by Parcells does not amount to a controverted fact and thus fails to establish the court erred in granting summary judgment for this final point. As a rule, "[a] disputed question of fact which is immaterial to the issue does not preclude summary judgment." *Foxfield Villa Assocs. v. Robben*, 57 Kan. App. 2d 122, 126, 449 P.3d 1210 (2019). Parcells' education and experience are irrelevant to the inquiry of whether he violated K.S.A. 65-28a06. Even if it were, the Board properly notes that Parcells failed to present any evidence establishing that he is part of any pathologist assistant association or organization. Moreover, the practices of pathologist assistants in other states are immaterial because Parcells' practice is governed by the law of this state. The salient question that emerges is whether Parcells improperly held himself out to the public as a physician's assistant when using the abbreviation "PA."

Similar issues were addressed in *State ex rel. State Bd. of Healing Arts v. Thomas*, 33 Kan. App. 2d 73, 97 P.3d 512 (2004). Thomas was a licensed dentist who decided to place the title "M.D." after his name even though he only attended an eight-week medical school in the West Indies and was never licensed by the Kansas State Board of Healings Arts. The Board sought to enjoin Thomas from using the title under K.S.A. 65-2867(a) and the district court granted Thomas' motion for summary judgment. See K.S.A. 65-2867(a) (proscribing a non-licensed individual from "announc[ing] or hold[ing] out to the

19

public the intention, authority or skill to practice the healing arts as defined in the Kansas healing arts act by the use of any professional degree or designation, sign, card, circular, device, advertisement or representation"). This court considered the case on stipulated facts, including that Thomas was not licensed by the Board of Healing Arts but freely used the "M.D." designation. We explained that K.S.A. 65-2867(a) aimed to protect the public by preventing unlicensed individuals from claiming they are qualified to perform the healings arts. 33 Kan. App. 2d at 80-81. Ultimately, this court reversed the district court's denial of the Board's request for an injunction. 33 Kan. App. 2d at 83-85.

Here, the Board makes a similar, public safety driven argument. It notes that reasonable Kansans might believe that Parcells' use of "PA" suggests "licensure as a physician assistant when that acronym is used in the context of offering services that are reserved for physicians or those operating under the direction and supervision of a physician—such as the precise role defined for Physician Assistant under Kansas law."

Parcells does not dispute the fact that he is not licensed as a physician assistant, nor does he dispute that he actively uses the abbreviation "PA" Instead, he suggests that members of the public are capable of readily discerning from the fact he uses the abbreviation in the context of tissue recovery that he is a pathologists' assistant rather than a physician assistant. But even if that were true, it amounts to little more than supposition and conjecture which is not enough to sustain his burden. When resolving all facts and reasonable inferences in Parcells' favor, he has still neglected to produce any actual evidence to establish a disputed material fact. Put differently, reasonable minds cannot differ that Parcells' use of the title "PA" may improperly convey to the public that he is a physician assistant in violation of K.S.A. 65-28a06(b). Accordingly, the district court properly granted the Board's request for summary judgment as to this issue.

To properly contest the Board's motion for summary judgment, Parcells had the burden to come forward with evidence that demonstrated the existence of a disputed

20

material fact. We have thoroughly reviewed and analyzed each point offered by the Board in support of its motion, Parcells' arguments in opposition to the Board's request, the record on appeal, and the law governing the issues raised. That analysis revealed that no compelling factual disputes exist in this case. There is therefore no identifiable error in the district court's decision to grant the Board's request for summary judgment.

Affirmed.